STATE of Missouri ex rel. Alphonsine
McCARTY, Relator,

v.

William H. KIMBERLIN, Judge of the Bu-
chanan County Circuit Court; and Law-
rence A. Kelly, Circuit Clerk of Buchanan
County, Missouri, Respondents.

No. KCD 26937.

Missouri Court of Appeals,
Kansas City District.

April 1, 1974.

Dale R. Copeland, Raytown, for relator.

Don Pierce, St. Joseph, for respondents; Downs & Pierce, St. Joseph, of counsel.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ.

PRITCHARD, Judge.

The issue is whether respondent judge had jurisdiction to proceed and adjudicate the matter of custody of a minor child in habeas corpus proceedings whose status of neglect and an award of custody had been previously adjudicated and made in the juvenile division of the same court under § 211.031, RSMo 1969, V.A.M.S.

The records which have been lodged in this court pursuant to the writ of certiorari show these facts: On February 26, 1973, a petition was filed in the juvenile court by the juvenile officer In The Interest Of Bobby Lee McMackin, alleging that he was a child born on July 19, 1968, and was in the custody of his mother, Sharon K. Tatro. As to jurisdiction of the court, it was alleged "[T]he natural mother is unable to provide the necessary care, maintenance, and support for this child, he is in need of the care and protection of the Court." Reports of investigation of the child, his family, and of his living conditions and care were filed by the Division of Welfare and a deputy juvenile officer. On April 11, 1973, the finding and order of the court recites: "Comes now Bobby Lee McMackin in person; his natural mother, Sharon K. Tatro and the grandmother, Alphonsine McCarty, with their attorney, Garth Landis. Ronnie Lee McMackin, who claims to be the father of Bobby Lee McMackin; LeRoy H. Maxwell, Jr., Chief Juvenile Officer within and for Buchanan County, Missouri." The cause was submitted to the court which found that the child was a boy 4 years of age and that his natural mother was not able to care for him; that he was in need of the care and protection of the court; and that the maternal grandmother has had his care and custody since he was a few months old. It was ordered, adjudged and decreed that Bobby Lee McMackin was a child within the provisions of § 211.031, and that he be placed in the care and custody of the maternal grandmother, Mrs. Alphonsine McCarty (relator here), until further order of the court.

Then on May 1, 1973, Ronnie Lee McMackin, filed in the circuit court of Buchanan County a petition for habeas corpus of Bobby Lee McMackin, alleging that the child was illegally restrained of his liberty by Alphonsine Mae McCarty; that he was "not restrained for any criminal or supposed criminal matter, but is restrained by Alphonsine Mae McCarty, the grandmother of said child, from his natural father, the petitioner herein, that the petitioner has lawful custody of said child as his natural parent, and is entitled to the custody of said child at this time." The writ of habeas corpus was issued the same day, commanding that the child be brought before the court on May 18, 1973. Relator's answer to the writ set forth, among other things, that she had lawful custody "due to a recent hearing and order of the Honorable Frank Connett, Judge of the Juvenile Court." Petitioner's answer to the return to the writ of habeas corpus admitted "that Bobby Lee McMackin is in the custody of respondent by order of Judge Frank D. Connett, Jr.," but denied that said judgment precluded him from maintaining this Writ or precluded this Court from granting him custody of said minor child. On May 18, 1973, the cause was, with all interested parties present, taken up and heard, and the court found that petitioner, Ronnie Lee McMackin, is the natu-

ral father of the child, whose interest would be best served if he were placed in the custody of petitioner, and it was so ordered. Thereafter, this present proceeding in certiorari was instituted. That is the proper remedy, but the review is not upon the merits of the habeas corpus proceeding. Hutchinson v. Wesley, 455 S.W.2d 21, 24[6–8] (Mo.App.1970); Jones v. State, 471 S.W.2d 166, 168[2, 3] (Mo.1971), and State ex rel. Coffield v. Buckner, 198 Mo. App. 230, 200 S.W. 94, 96[6] (1918).

In pertinent parts § 211.031 provides: "Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings: (1) Involving any child who may be within the county who is alleged to be in need of care and treatment because: (a) The parents or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his well-being; * * * or (b) The child is otherwise without proper care, custody or support; * * *."

▮ Respondents' first claim is that the order of the juvenile court was invalid and a nullity in the first instance in that it did not find any specific condition to exist which would bring the child within the purview of § 211.031 as a neglected child. It is said that no mention was made in the order that the child was neglected, nor did the juvenile court make any finding, specifically or generally, that the child was neglected. Reliance is placed solely on State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S.W. 617 (Mo. banc 1925). That part of the Court of Appeals opinion which was there quashed in certiorari proceedings did deal with the sufficiency of a juvenile court's finding that a child was a "neglected child" within the meaning of that term as defined by the 1919 statute: "'For the purpose of this article, the words "neglected child" shall mean any child under the age of seventeen (17) years, who is destitute or homeless, or abandoned, or depend-

ent upon the public for support, * * *.'" The juvenile court found only "'that said Margaret Marty is neglected, it is ordered by the court that Margaret Marty be made a ward of the court and committed to her father, L. A. Marty.'" At page 622 the court said [2], "In its definition of the words, 'neglected child' the Legislature has carefully, expressly, and explicitly defined and limited the jurisdiction which it has conferred upon the juvenile court with respect to neglected children. Whenever that court undertakes, on the score of neglect, to supervise the care and custody of a child who is not 'destitute or homeless, or abandoned,' etc., it is merely an intermeddler, and its order is a nullity. But it is competent for the juvenile court to determine in a given case whether a child is a 'neglected child' 'within the definition thereof' contained in the statute; * * *. [4] According to the record under review, the juvenile court of Jackson county did not find the existence of any specific condition which would have placed the child, Margaret Marty, within the statutory classification of a 'neglected child,' nor did it find generally that she was a 'neglected child' within the statutory definition thereof. It merely found that 'Margaret Marty is neglected.' * * * [I]ts finding of mere neglect, to which nothing can be added by intendment, falls far short of 'destitute or homeless, or abandoned, or dependent upon the public for support,' etc., the conditions specified in the statute." The net effect of the Dew case was to allow the circuit court habeas corpus proceedings to stand because the juvenile court had not made such a finding as to give it prior jurisdiction over the child. And in the lack of a statutorily sufficient finding the Dew case may be distinguished, and therefore is no help to respondent. Here the juvenile court expressly found *that the child's natural mother was unable to care for him and he was in need of the care and protection of the court;* that *he was a child within the provisions of § 211.031;* and he be placed in the care of his maternal grandmother, *until the further order of the*

*court.* These findings are sufficient to give the court jurisdiction because he was a child otherwise without proper care, custody and support within the purview of § 211.031. Since the basic facts were found it was unnecessary for the court to have specifically found that the child was a "neglected child." Respondents' claim to the contrary is overruled.

■■■ Citing § 211.051, respondents claim that the juvenile court's jurisdiction as it relates to custody of minor children is not exclusive but is qualified by statute. It is true that § 211.031 provides for exclusive original jurisdiction "Except as otherwise provided herein," and that § 211.051 provides further, "Nothing contained in sections 211.011 to 211.431 deprives other courts of the right to determine the legal custody of children upon writs of *habeas corpus* or to determine the legal custody or guardianship of children when the legal custody or guardianship is incidental to the determination of causes pending in other courts. * * *." What this statute and the exception in § 211.031 mean is that the institution of suits may be had initially in any court having at that time concurrent jurisdiction. Thus custody of children may be adjudicated in suits for divorce and by writ of habeas corpus. The argument, however, ignores the proposition noted in the Dew case, supra, page 621, of priority of jurisdiction, in ruling that the Court of Appeals opinion on that subject was not in conflict with In re Gladys Morgan, 117 Mo. 249, 21 S.W. 1122, 22 S.W. 913 (1893): "The Morgan Case applies to actions between husband and wife involving the custody and control of their minor children the familiar principle that, when a court of competent jurisdiction acquires jurisdiction over the subject-matter of a case, its authority continues, subject only to appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate jurisdiction is at liberty to interfere with its action. * * * [A]nd that, when the juvenile court has in

a given case assumed jurisdiction with respect to any such child, its jurisdiction supersedes that of any and all courts touching the same subject-matter." Note that this statement accords with the rule in other courts in the Court of Appeals opinion quoted in Dew, 269 S.W. at pages 620 and 621. See also and generally, 20 Am.Jur.2d Courts, § 128, p. 481, and 21 C.J.S. Courts § 492, p. 745. But note the case of State ex rel. Dubinsky v. Weinstein, 413 S.W.2d 178, 182[8] (Mo. banc 1967), holding that even though there had been a prior adjudication of custody in a divorce suit, a juvenile court could assume jurisdiction over a child by a petition of a juvenile officer invoking § 211.031, because "the proceeding is predominently an inquiry by the State rather than a contest between vindictive parents seeking a divorce decree granting custody or a modification thereof." Under this principle the juvenile court having first validly assumed and found its jurisdiction, as here above held, may proceed to a completion of the matter, with continuing jurisdiction (§ 211.041), to the exclusion of any other court of concurrent jurisdiction. Respondents' contention to the contrary is without merit.

■■■ Respondents lastly seek justification of the adjudication of custody in the habeas corpus proceedings by the contention that the juvenile court can only enter permanent orders as they relate to a minor's status in (1) terminating parental rights and (2) entering decrees of adoption. The contention is fallacious because clearly the juvenile court may make orders of custody under § 211.181, and may retain jurisdiction of the child for custody purposes (as was here done, i. e. "until further order of the court") under § 211.041. The orders of the court may be modified at any time on the court's own motion or on the petition of any interested party under the plain provisions of § 211.251.

The controlling law of this case is set forth in the decision of State ex rel. Cof-

field v. Buckner, 198 Mo.App. 230, 200 S. W. 94 (1918), cited by appellant, and which has never been modified. There were in that case rather unusual facts leading to the contest of jurisdiction as between a juvenile court and a later instituted proceeding in habeas corpus, which contest is precisely the situation here. In October, 1914, with the mother and father present, the juvenile court found the child to be neglected and ordered its conditional custody to the mother. Thereafter, the father prosecuted a divorce suit in Kansas, "whereby, in entire disregard of the jurisdiction orders and judgments of the juvenile court in Missouri, he sought to obtain, and did obtain, an order of the district court in Kansas awarding the custody of the child to himself, the child all the while residing in Missouri and a ward of, and in the custody of, the juvenile court." Interim Kansas proceedings were had which ultimately divided the custody of the child between the parents and the mother brought it to Missouri and entered it in a Kansas City academy as a pupil. The father then applied for and obtained from the circuit court a writ of habeas corpus, and the mother then filed a proceeding by certiorari, challenging the validity of the judgment in habeas corpus in the Court of Appeals, which quashed the judgment. The court said, loc. cit. 200 S.W. 96[6]: "To allow success to the effort of Lewis E. Coffield (the father) would cause unseemly clashes of authority between courts of equal dignity and jurisdiction, and would permit one, in the midst of a lawful exercise of jurisdiction first obtained by the other, to step in and overthrow the proceedings thus rightfully instituted and lawfully carried out by the other. It seems clear that this should not be allowed, and may be prevented by certiorari when the power usurped appears in the record (citing cases)." The Coffield case accords with the general rule. Annotations, 11 A. L.R. 147; 78 A.L.R. 317 (distinction between questions concerning merely the custody and control of a child and those per-

taining to its neglect or delinquency); and 146 A.L.R. 1153, 1157, 1171.

The judgment in the matter of habeas corpus is quashed.

All concur.