In the Interest of R. L. L., A Male Child, four years old (Mary-Natural Mother), Appellant,

v.

Stephanie STRAIT, Juvenile Officer, Respondent.

No. WD 32104.

Missouri Court of Appeals, Western District.

Feb. 23, 1982.

As Modified May 4, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Frederick William Martin, Warrensburg, James L. Muller, Kansas City, for appellant.

James D. Worthington, Lexington, for guardian ad litem.

Weldon Wayne Perry, Lexington, for respondent.

Before SOMERVILLE, C. J., and SHANGLER, PRITCHARD, WASSERSTROM, TURNAGE, CLARK and KENNEDY, JJ.

KENNEDY, Judge.

The Juvenile Court of Lafayette County on August 12, 1980, ordered terminated the parental rights of Mary to her four-year-old son R. L. L., and the mother appeals.

The juvenile officer of Lafayette County on May 21, 1979, had filed a petition in the juvenile court in which he alleged that the juvenile "on or about May 19, 1979 . . . was picked up by officers of the Lexington Police Department following a report that said juvenile was wandering in an area behind Old Town Tavern in Lexington and further that said juvenile was nude and in extremely unclean physical condition and without proper adult supervision. Following the taking of the child into custody by the police, the mother of the child apparently attempted suicide by drug overdose and was admitted to Lexington Memorial Hospital for treatment".

On June 4 a hearing was held on said petition and the court sustained the same, finding the facts exactly as stated in the petition, and concluding "that therefore the court has jurisdiction over the juvenile pursuant to the provisions of § 211.031, RSMO". The court acting under authority of § 211.181, RSMo 1978,[1] placed the child with the Division of Family Services, which in turn placed him in a foster home.

On May 30, 1980, the juvenile officer filed a "Supplemental Petition for Termination of Parental Rights". That petition followed § 211.447.2, alleging that "the custody of the child (R. L. L.) has not been with his mother (Mary) for six months or longer, and the child has been under the jurisdiction of the court for one year or longer, immediately prior to the filing of the petition to terminate, and the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under § 211.031, and the order entered under § 211.181, and there is reasonable cause to believe that the parent will not, even if given more time, rectify those conditions on a continuing basis, and that the juvenile officer and the Division of Family

Services have used reasonable, diligent and continuing efforts to aid the parent to rectify the conditions, and provide on a continuing basis a proper home for the child".

On the 12th of August, 1980, a hearing was held and the court found the facts to be as alleged in the petition, employing the same terminology as the petition, and entered an order terminating the parental rights of the mother. It is from that order that the mother prosecutes this appeal.

We have before us the record of the testimony and evidence before the court in that August 12, 1980, hearing. There was evidence presented about the mother's frequent moves from place to place, her unemployment and her unemployability, her living with different men, her epilepsy (controllable by medication), and her rather irresponsible response to the attempts of the Division of Family Services to get her straightened out. This evidence, upon the mother's objection, was confined to the period after June 4, 1979—after the child was removed from her custody.

■ If the juvenile officer was depending upon the mother's manner of life as "the conditions which formed the basis of the (original) petition", the evidence leaves the question unanswered whether the mother's manner of life as described in the evidence began only on or after June 4, 1979, or was it a condition which was in existence at that time and before? This is a necessary inquiry, for the nub of the termination of parental rights proceeding is that the parent has not, after the juvenile court has taken jurisdiction of the child under the original petition filed under § 211.031, rectified "the conditions which formed the basis of the petition". If those are the conditions upon which the juvenile officer relies—which she had allegedly failed to rectify—then they must be proved to have existed at the time of the original petition. Of that there is no proof at all.

■ The juvenile officer seems to argue that the allegation and the proof of the child's being found naked, unattended and

1. All statutory references are to RSMo 1978.

unwashed on May 19, 1979, was the allegation and proof of "conditions" for the failure of which to rectify the mother is to suffer the severance of her parental relationship. Two things are wrong with that position. The first is, How could the mother dress, wash and attend to the child (thus "rectifying" the "conditions") after he had been removed from her custody? The second thing wrong with such a position is that the evidence of the incident of.May 19, 1979, did not show "conditions". The incident described in the petition and shown by the evidence could have been an isolated incident, which had never occurred before. The word "conditions" connotes some continuing character. An isolated incident, even though indicating negligence of the mother on that particular occasion, was not "conditions" which justified the court's order terminating the parental relationship. *In Re C___*, 468 S.W.2d 689, 691–692 (Mo. App.1971).

We have requested and have been supplied with a transcript of the June 4, 1979, hearing, upon which the juvenile court took jurisdiction of the child initially under § 211.031. In that hearing there was some hearsay evidence, consisting of Division of Family Services' reports. *See In the Interest of A. R. S., a Minor*, 609 S.W.2d 490, 491 (Mo.App.1980). The following testimony by a Division of Family Services' representative gives a fair summary of it:

> MS. BLAND: Okay, according to our record that we have had since shortly after 1976, when the child was born, there has been a consistent pattern of instability in the household in that [Mary] has moved several times. There have been complaints from various people as to the care that the child was receiving. Such specific kinds of complaints had to do with being able to control the child's behavior. There are details in the record insofar as incidents prior to this incident from hot line reports, which is of child abuse, of neglect and investigations performed by our office. Three of them were suspicioned, and case services were maintained open. One was substantiated because of obvious evidence that the worker had at that point.

█ Evidence of welfare workers' reports was objected to in that hearing, but the evidence was admitted, anyway.[2] The original order, by which the juvenile court took jurisdiction of the child and removed him from the mother's custody, was not appealed. Assuming that the conditions described in Ms. Bland's testimony which we have just quoted were the "conditions" upon which the juvenile officer relied, the testimony on the June 4 hearing does not supply the lack of evidence in the second hearing. The second hearing was a new and independent case, in the same sense that a motion to modify a dissolution decree is a separate and independent proceeding from the original dissolution proceeding. Rule 121.01; § 211.251; *In re A. A.*, 533 S.W.2d 681, 684 (Mo.App.1976); *State ex rel. McCarty v. Kimberlin*, 508 S.W.2d 196, 199 (Mo.App.1974); *State ex rel. Brault v. Kyser*, 562 S.W.2d 172, 174 (Mo.App.1978).[3]

2. The record before the juvenile court on the termination proceeding—and now on appeal—does not contain the report of investigation and social study required by § 211.472, RSMo Supp.1979, "to aid the court in determining whether the termination is in the best interests of the child." The statute makes provision for attorney access to the report at least fifteen days prior to hearing. This report, as to "the parental background, the fitness and capacity of the parents to discharge parental responsibilities, etc." is a prerequisite to a termination adjudication—and so, a necessary component of the record on appeal. We have held so in *In the Interest of D. E. J., J. C. D., M. M. S. v. G. H. B.*, 631 S.W.2d 113, 1982. Such reports as the court had before him were on the hearing on the original petition by which the juvenile court assumed jurisdiction over the child, and so not the written report § 211.472 contemplates in aid of the court to determine the best interests of the child on a termination proceeding.

3. In *State ex rel. Brault v. Kyser*, 562 S.W.2d 172, 174 (Mo.App.1978) Judge Wasserstrom wrote: "An analysis of Chapter 211 leads to the conclusion that the two proceedings are separate, as relator contends. Proceedings pertaining to neglected children are covered by Sections 211.031–211.431. In careful contrast, provisions pertaining to the termination of parental rights are grouped together as Sections 211.441–211.511 and are specially marked off

The reasons are obvious enough. Where the requested relief was the assumption by the juvenile court of jurisdiction over the child, and perhaps a temporary removal from the mother's custody (as it was in the earlier hearing of June 4, 1979), she would not take the same measures to resist damaging testimony—either by objection to admission, by cross-examination, by contradiction or by appeal—as she would if the relief sought were the permanent termination of her parental rights (as it was in the later hearing). Rule 121.01; § 211.251; *In re A. A.*, supra; *State ex rel. McCarty v. Kimberlin,* supra.[3] Actually, the juvenile officer does not claim that the evidence on the prior hearing was entitled to consideration by the court in the second hearing, but we have considered the question *sua sponte.*

We reverse the judgment of the juvenile court. We have considered outright reversal, but have concluded instead to remand the same to the trial court for further proceedings. The juvenile officer may wish to amend this petition for the termination of parental rights, alleging a statutory basis for the same, and then may undertake to prove the allegations of the petition by competent evidence.[4] We do not undertake to direct the trial court how to rule upon any such application to amend, who will be guided by criteria applicable in such situations. *D. E. J. v. G. H. B.,* 609 S.W.2d 472 (Mo.App.1980).[5]

All concur.

with the subheading 'Termination of Parental Rights.'

"Not only are these two sets of provisions sharply divided by distinct separation and specific headings, but each has a fundamentally different purpose. The neglected child provisions contemplate only a temporary shift of custody and leave the underlying parental rights intact. On the other hand, Section 211.-441 et seq. contemplates a complete and permanent rupture of the family relationship."

4. With respect to the measure of proof required for the termination of parental rights, the Supreme Court of the United States has recently said, *Santosky, et al., v. Kramer, Commissioner, Ulster County Department of Social Serv-*

*ices, et al.,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982):

A majority of the States have concluded that a "clear and convincing evidence" standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns.... We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process.

5. In any case the juvenile court jurisdiction over the child will continue under the June 4, 1979, order, until such jurisdiction is terminated.