**In the Interest of D. A. F., Jr. and M. L. F., Minors.**

**Susan FRIEDLI, Appellant,**

v.

**Jerry MOYER, Juvenile Officer, Respondent.**

**No. WD 32829.**

Missouri Court of Appeals, Western District.

Aug. 3, 1982.

Howard C. Gosnell, Jr., Bradford L. Pittenger, Nevada, for appellant.

J. Lee Guthrie, Nevada, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

By order dated October 9, 1980, the circuit court in Vernon County terminated the parental rights of Susan to her son, D. A. F., Jr. born July 27, 1973, and to her daughter, M. L. F. born November 10, 1974. The mother appeals contending insufficient evidence was presented to support a finding that she had failed on a continuing basis to rectify the conditions which led to the original change of custody. Reversed.

The two children were removed from their mother's custody in mid-December 1975 [1] on the petition of the county juvenile officer filed November 13, 1975. Apparently the children remained in a state or county facility until April 1976 when they were transferred to a foster home. A petition to terminate parental rights was filed April 1, 1980. It alleged, in the form of § 211.447, RSMo 1978, that the children had been under the jurisdiction of the juvenile court for more than one year and had not been with their parents for more than six months, that the parents had failed on a continuing basis to rectify the conditions upon which the original petition and custody transfer had been based, and that there was reason to believe the parents would not rectify the conditions on a continuing basis, even if given more time to do so.

A hearing on the petition for termination was held September 8, 1980 and continued on September 22, 1980. The natural father, from whom the mother had been divorced in 1975, filed a written consent to the termination, but the mother appeared to oppose the proceeding. She was represented by appointed counsel who has acted on her behalf in prosecuting this appeal. At the conclusion of the hearing, the trial court ordered parental rights terminated, as to the father on the basis of his written consent, and as to the mother, Susan, on the basis of findings as follow:

"The Court finds that Susan [Blank] has failed on a continuing basis to maintain contact and to cooperate with the Division of Family Services in rectifying the conditions that led to neglect of the children. The Court finds that Susan [Blank] voluntarily departed for the State of California two or three weeks after agreeing to a plan working toward her reunification with her children, and that she has lived in numerous locations for relatively short periods of time and has had only intermittent and sporadic contact with her children or the Division of Family Services.

"The Court finds that the mother's inability to establish a settled location has prevented the Division of Family Services from carrying out a reunification plan aimed at correcting the situation that led to the neglect of the children. The Court

1. The date of the transfer order is uncertain. The formal order bears a filing date of December 19, 1975 and is so recorded in the court's docket. The judge's handwritten entry, however, shows the hearing to have been conducted on December 29, 1975 and the order entered as of that date.

finds that the Division of Family Services has put forth a reasonable, diligent and continuing effort in this matter. The Court does not believe that Susan [Blank] will undertake the necessary effort on a long term basis to rectify the problems that have led to the neglect of the children."

The trial court then concluded that Susan had failed to rectify the prior conditions of neglect which had led to the temporary transfer of custody of the children and ordered her parental rights terminated. The issue is whether this record contains clear and convincing evidence[2] sufficient to support that conclusion.

At the hearings on September 8 and 22, 1980 on the petition to terminate parental rights, the witnesses who testified, in addition to the mother, Susan, were the notary who acknowledged the father's signature to the consent to adoption, two social service workers with the Division of Family Services and one of the foster home parents with whom the children had been placed. Not one of these witnesses gave any evidence as to what facts had brought about the temporary transfer of the children's custody in December 1975 or in what particulars the children had been found to be neglected. If there be any evidence to supply this detail, it can only be in the remainder of the record on this appeal.

Looking first to the petition filed November 13, 1975, the allegation there is "the above named children are without proper care, support and supervision." The petition is devoid of any factual allegations whatever and is essentially a printed form with spaces to be filled up with names and dates. The next document is the order transferring custody. The judge's docket sheet indicates a hearing was conducted December 29, 1975 and the order transferring custody was made thereafter, but we have no other record of that proceeding. No record of notice to or appearance by Susan appears and there is no indication of what evidence, if any, was presented. The order transferring temporary custody parrots the conclusionary language of the petition. In short, this record contains not a clue as to how it was that Susan is claimed to have initially failed in her obligation of parental responsibility. To all appearances, the trial judge was equally uninformed.[3] Valid challenge is therefore leveled at the evidentiary basis for a finding of Susan's failure to rectify the conditions which brought about the custody transfer.

■ The standard of review in a court-tried case where the rights of a parent have been terminated is upon both the evidence and the law as in suits of an equitable nature. Due regard is given for the opportunity of the trial court to judge the credibility of the witnesses and the decree will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law. *In Interest of M___ K___ P___*, 616 S.W.2d 72, 80 (Mo.App.1981). The right of natural parents to have custody of their children is considered inviolate and is vigilantly guarded unless the children's welfare is jeopardized by reason of parental unfitness; this relationship is too sacred and runs too deep to be indifferently approached or lightly interfered with. In *In the Interest of Dimmitt*, 560 S.W.2d 368 (Mo.App.1977). A proceeding to terminate parental rights is a new and different "civil action" distinct from and encompassing entirely different proof from an action for temporary transfer of custody. *State ex rel. Brault v. Kyser*, 562 S.W.2d 172 (Mo. App.1978).

---

**2.** See *Santosky, et al. v. Kramer, Commissioner, Ulster County Department of Social Services, et al.,* ___ U.S. ___, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

**3.** While not necessarily significant for purposes of appellate review, it is to be noted that the trial judge who entered the December 1975 order was not in office in 1980. Judge Reaves, who presided at the termination hearing, had no familiarity with the case based on evidence earlier received but not preserved in this record.

The present case is similar to R_____ L_____ L_____ v. *Strait*, 633 S.W.2d 409 (Mo.App.1982), although some evidence was presented there showing the child to have been physically unclean wandering in an area behind a tavern before the original proceeding to transfer custody was filed. In that case we pointed out the nub of the termination of parental rights proceeding to be a showing that after juvenile court jurisdiction has attached by temporary transfer of custody, the parent has not rectified "the conditions which formed the basis of the petition." Those conditions which the parent allegedly failed to rectify must be proved to have existed at the time of the original petition. In the present case, as in R_____ L_____ L_____ v. *Strait, supra*, there is no proof of those conditions in this record at all.

The termination order here appears to rely substantially on evidence that Susan frequently moved from place to place, evinced little inclination to cooperate with social service workers and had only sporadic contact with the children in the foster home. It must be noted, however, that this proof was limited to the period following the transfer of custody and is unrelated in any way to conditions which formed the basis for the original petition. The error is an assumption that failure of the parent to work harmoniously with and satisfy the requirements of a plan formulated by the Division of Family Services obviates any need to prove what deficiencies in child care and supervision were at the origin of the proceeding. Such an approach tends to relegate the fact finding function to the social agency. Under the authorities cited, the court is not entitled to abdicate this responsibility.

In the R_____ L_____ L_____ v. *Strait* case, *supra*, the relief granted appellant parent was to reverse the judgment terminating parental rights and to remand the case for further proceedings. Appellant here seeks similar relief, asking in her brief that the case be remanded for a new trial. Of course, the issue of neglect adjudicated by the December 1975 order is no longer open and any practical likelihood for reunification of the mother and these children who have been in foster care for more than six years is remote if not non-existent. The termination of parental status is, however, viable. The mother is entitled to require that the elements and standard of proof applicable be observed.

The judgment terminating parental rights of the father, D. A. F., Sr., is affirmed. The judgment terminating the parental rights of the mother, Susan, is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.