In the Interest of D.R.W., and B.A.W., Minors under 17 years of age.

Larry LIVINGSTON, Juvenile Officer, Respondent,

v.

V.L.D., Appellant.

No. 13038.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 29, 1983.

John Ashcroft, Atty. Gen., Melinda Corbin, Asst. Atty. Gen., Jefferson City, Donald G. Cheever, Marshfield, for respondent.

Robert B. Hankins, Springfield, for appellant.

PER CURIAM.

By the time she was 24 years old, the appellant mother had given birth to five children. All of the children were illegitimate. One was apparently legitimized by a subsequent marriage. Each of the children has a different father. In this action, upon a petition of the juvenile officer, the trial court terminated the parental rights of the fathers and the appellant in regard to two of those children. The mother appeals.

The appellant does not dispute the basic facts that brought the children within the jurisdiction of the Juvenile Court. The following is a summary of that background.

The care the appellant bestowed upon her children first came to the attention of the authorities in January 1976. At that time, she and her two then born children were living in a mobile home in Webster County. Those two children were D.R.W., a boy born June 20, 1973, and G.W., a girl born June 24, 1975. An investigation disclosed abysmal living conditions. The juvenile officer filed a neglect petition in regard to those two children. On a temporary order they were made wards of the court. After the appellant's living conditions had apparently improved, those two children were returned to her.

In June 1978, the appellant and her then born three children were living in a big house in Webster County. B.A.W., a boy had been born on July 2, 1976. The appellant and her children again came to the attention of the authorities. Again, living conditions in that house were those of filth and irresponsibility. Some of the utility services had been discontinued. Various males had off and on lived in the house. Based upon these circumstances, on June 12, 1978, the juvenile officer filed a neglect petition under § 211.031. The appellant admitted the allegations of that petition. On March 22, 1979, D.R.W. and B.A.W. were made wards of the juvenile court and placed in foster care. They have remained in foster care since that time. In October 1978, the appellant moved to Greene County, where she has since resided.

The petition for termination was filed in March 1981. The petition included allegations that D.R.W. and B.A.W. had not been with their parents for six months or longer, had been under the jurisdiction of the juvenile court for one year or longer immediately prior to the filing of the petition, and that the parents had failed, on a continuing basis, to rectify the conditions which formed the basis for the petition filed under § 211.031 and the order entered under § 211.181. It further alleged there was reasonable cause to believe the parents

would not, even given more time, rectify those conditions on a continuing basis, and that the division of family services had used reasonable diligence and continuing efforts to aid the parents in rectifying those conditions and to provide on a continuing basis a proper home for the children. Those allegations set forth the basis for termination contained in § 211.447.2(2)(i)b. A full hearing was held on November 12, 1981. An adjourned hearing was held on May 18, 1982. Following these hearings, the juvenile court entered a judgment terminating the parental rights of the fathers and appellant as to D.R.W. and B.A.W.

The appellant's first point is that the evidence of her conduct is insufficient to support the judgment of termination. She argues the absence of evidence to show she failed to rectify the conditions which were the basis of the petition filed under § 211.-031. To support her argument, she cites testimony that her cleanliness was improving and that her house was cluttered, but not dirty. She relies heavily upon the conclusion of a social worker that she had complied with all of the proposals of a plan for rectification, except for her visits with the children.

As a prerequisite for a judgment of termination, it is essential the evidence establish the conditions which induced the court to originally take jurisdiction under § 211.031 and § 211.181. *In Interest of D.A.F.*, 637 S.W.2d 780 (Mo.App.1982); *R.L.L. v. Strait*, 633 S.W.2d 409 (Mo.App. 1982). The evidence in this case meets that criteria. The original petition alleged the children were in need of care and treatment because of neglect. It further alleged the necessity for the court to assume custody of the children because their environment was injurious to their welfare in that they were without proper care, custody and support. Reference has been made to the evidence of a course of conduct of the mother by which she demonstrated neglect of the children. That conduct included maintaining filthy living quarters and permitting the children to go without physical care. At times, the family lived without utility services. Her conduct also included permitting first one man and then another to live with her and her children.

As stated, the underlying condition which formed the basis of the original petition was the appellant's neglect to provide proper support and other care necessary for the children's well-being. § 211.031.1(1)(a). As used in that section, the term neglect is not further defined. It is clear the term encompasses the conduct of a parent who is manifestly not interested in the well-being of his or her child. The term neglect as an independent basis for the termination of parental rights is defined in § 211.447.-2(2)(b). A portion of that definition is as follows: "[T]he failure to provide a child who is in the legal or actual custody of others with a continuing relationship, such as, but not limited to, communication or visitation, and, to the extent the parent is financially able, the failure to provide for the child's care." An observation in a recent well reasoned, comparable case is particularly appropriate to this case.

It happens that the initial jurisdiction of the juvenile court over the three children under §§ 211.031 and 211.181 was for *neglect*. Although §§ 211.031 and 211.181 are not, strictly, *in pari materia* with the Termination of Parental Rights sections 211.442 to 211.492, the *neglect* definition of § 211.447.2(2)(b): *'failure of a parent to provide, on a continuing basis, the care, guidance and control necessary for the physical, mental, and educational well-being of a child'* [emphasis added] suits the proof required for the termination of the parental right based upon an uncorrected *condition* of neglect which induced initial jurisdiction over the child under § 211.031 and then becomes the basis for termination of parental right under § 211.447.2(2)(h)b. *D.E.J. v. G.H.B.*, 631 S.W.2d 113, 119, n. 10 (Mo. App.1982).

In arguing the insufficiency of the evidence of her conduct, the appellant ignores the evidence contrary to her position. This demonstrates why her position is fundamentally unsound. The trial court did not

accept the bits of evidence and unfounded conclusion favorable to her. It was not required to do so. *In re B.G.S.,* 636 S.W.2d 146 (Mo.App.1982).

■ The appellant contends the proof fails because the division of family services permitted three of her children to live with her. This could result from many reasons. The record suggests the absence of a desirable alternative. The youngest child was afflicted with Pierre Robin Syndrome. The next had a severe visual problem. In any event, that fact does not conclusively refute the existence of unrectified conditions of neglect shown to exist.

Evidence of unrectified conditions of neglect included the following. Since moving to Greene County, the appellant has lived in six different places. At various times, certain utilities have been discontinued. On unscheduled visits of a social worker, the appellant's house has been cluttered and dirty. There was evidence that at times the children in her custody were dirty, and that one attended school in an unkempt condition. She has continued to permit first one man and then another, and others, to live with her and the children. During the period in question, she has given birth to another illegitimate child. Shortly before the full hearing upon the petition to terminate, a man to whom she was not married was living with her and the children.

■ The most demonstrable feature of her neglect has been her failure to maintain a relationship with her children. During the 40 months before the full hearing, the appellant had visited the children only 20 times. These visits were primarily when the children were first placed in foster care. Her last visit before that hearing on November 12, 1981, was on August 14, 1980. There were no other communications with the children. At the full hearing, the appellant offered divers excuses for her failure. However, there was abundant evidence she was constantly advised of the importance of visiting and otherwise maintaining contact with her children. She was specifically warned that her failure to do so could result in termination of her parental

rights. The requirement of the social worker of two or three days' notice for visitation was not unreasonable. The evidence demonstrates that such a requirement was not a barrier to visitation. Her excuse of lack of transportation was refuted. On three occasions she was driven through the community and in close proximity to where the children resided. She made no effort to see them. Her ultimate excuse was reluctance to maintain a relationship with the children because the authorities had already decided they would not be returned to her. However, at the full termination hearing, the able trial judge unmistakably told her this was not true. The matter was continued. In the six following months before the final hearing, the appellant had made no effort to contact her children. "Chapter 211, RSMo. was substantially overhauled in 1978, in part to deal with the problem of parents who maintained only a superficial and tenuous relationship with their children. In the case at bar, the trial court found mother had made only a token effort to care for son." *In Interest of Gowen,* 610 S.W.2d 319, 320 (Mo.App.1980). The conduct of appellant with unmistakable clarity demonstrates her unrectified neglect of her children. Compare *In Interest of M____ K____ P____,* 616 S.W.2d 72 (Mo.App. 1981); *In Interest of Gowen,* supra. Also see *H.D. v. E.D.,* 629 S.W.2d 655 (Mo.App. 1982).

■ The appellant's next point is that the juvenile officer did not establish by clear, cogent and convincing evidence the efforts to aid her required by § 211.447.-2(2)(i)b. Her arguments under this point are in essence a restatement of her unfounded excuses for failure to communicate with or visit the children. Those arguments have been considered and denied. By her only additional argument the appellant contends that it was the duty of the Division of Family Services to take the initiative to insure that she visited or otherwise maintained contact with her children. This is not required. The record is replete with evidence the social workers and juvenile officer consistently made such visitation

available and encouraged the same. The same is true of the trial judge. Visitation or contact that does not originate with the desire of a parent would only amount to a superficial and tenuous relationship. By this argument the appellant has emphasized her neglect within the meaning of § 211.-447.2(2)(i)b.

By her last point, the appellant asserts reversible error because the trial court admitted pictures of her living conditions in 1976. Her complaint has no merit. If for no other reason, the conditions shown in those pictures were related to and said to be similar to her living conditions when the neglect petition was filed. They are clearly admissible to establish the later conditions. *In re D.L.W.*, 530 S.W.2d 388 (Mo.App. 1975). The judgment is affirmed.

All concur.