**IN the INTEREST OF D.L.D.**

**No. WD 36564.**

Missouri Court of Appeals,
Western District.

Nov. 12, 1985.

Michael W. Prenger, Juvenile Attention Center, Willard C. Reine, Jefferson City, for appellant.

David Kite, Mid-Missouri Legal Services Corp., Jefferson City, for respondent.

Before MANFORD, P.J., and PRITCHARD and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The juvenile officer and guardian ad litem appeal from an order by the trial court which denied a petition for termination of rights of the parents who have never been married and have remained separated since before birth of the child. The child, a boy, born on January 14, 1981, was taken into custody three months after birth by reason of the juvenile officer's petition and the court's finding that the child was neglected and within the juvenile court's jurisdiction under § 211.031, RSMo Supp.1984 (unless otherwise indicated, all other statutory references will be to the Revised Statutes of 1978). At the time of this appeal, the child is nearly five years old. Because the case has spanned four and one-half years, and because of the trial court's conclusions respecting jurisdictional infirmities beginning with the court's entertaining the original

change in custody, the following chronological table taken from the legal file and docket sheets is helpful in tracing the development of the case:

*1981*

April 10—Custody petition filed by juvenile officer Prenger in the Juvenile Division of the Circuit Court of Cole County.

April 10—Circuit judge issued order placing child in the custody of the Division of Family Services (DFS) for placement in an approved foster home. No petition or summons was ever issued or served on the parents. Copies of the juvenile officer's petition and the court order were *apparently* left with the paternal grandparents with whom the child was staying on this date.

April 20—Father applied for return of custody of child. No disposition or further mention was ever made of this motion which was noted in the docket sheets.

October 7—Service agreement to be submitted to the court entered into between father and DFS. No record was ever made.

*1982*

April 26—Juvenile officer filed petition to terminate parental rights.

April 29—Regular judge disqualified himself.

*1983*

June 29—Willard Reine appointed guardian ad litem for child.

June 30—"Foster Care Review Findings" —Michael Prenger, juvenile officer who filed original petition, acted as "hearing officer." Recommended that child remain in foster care with service agreement for 90 days. Later notations under the above heading refer to such orders signed by the juvenile officer, later approved by the court, after having been noticed up pursuant to § 211.027 and Rule 127.04 (both relate to Commissioners in juvenile matters).

The guardian ad litem, DFS representatives, one or both parents and the deputy juvenile officer are shown to have been present at this and later proceedings.

July 7—"Foster Care Review Findings" —Recommended that child remain in foster care.

July 18—90-day service agreement entered into between mother and DFS.

July 21—90-day service agreement entered into between father and DFS. (July 18, 1983—October 18, 1983.) A 30 day agreement was also signed.

July 22—Second judge assigned to the case disqualified himself.

August 1—Judge Roper assigned to case.

November 17—"Foster Care Review Findings"—Recommended that child remain in foster care. Continue Service Agreement until December 28th.

November 17—Recommended that Juvenile Officer and DFS initiate proceedings seeking the termination of parental rights of father within 60 to 90 days.

*1984*

February 24—Pre-trial conference. Agreed the Juvenile Officer would file amended petition to terminate parental rights.

March 13—First Amended Petition to Terminate Parental Rights filed by juvenile officer. Alleged grounds for termination: (1) Under § 211.447.2(2)(i)b, child has been within the jurisdiction of the juvenile court for one year immediately prior to the filing of the petition and parents have *failed* to *rectify* the *conditions* that formed the basis of the custody petition and order filed April 10, 1981; (2) Under RSMo 211.447.2(2)(b), the parents have *neglected* the child and have *failed* to *comply* with *court approved service agreements.*

April 18—Mother files Answer by her attorney denying alleged grounds for termination. Father examined by court and found indigent. Counsel appointed to represent father.

June 21—Termination hearing.

October 17—Memorandum Decision denying termination of parental rights petition on the merits after concluding the juvenile court had no jurisdiction because

of non-compliance of requirements in the custody petition, of summons to the parents and failure to provide a custody hearing. The order also found no court approval of the service plans thus negating any right to terminate for failure to comply with such plans.

Of particular importance is the fact that there was never a formal hearing which followed the custody transfer of the child to the Division of Family Services. At oral argument, the appellants, the juvenile officer and guardian ad litem, admitted that neither a summons nor the petition was served on either parent. However, a copy of the custody petition was delivered to the child's paternal grandparents subsequent to the Order. The appellants also admitted that there was no formal hearing under § 211.101. Additional facts will supplement the discussion of each point when necessary. Since the two grounds for termination arise out of the initial change of custody and since the judge in this termination trial determined the trial court was without jurisdiction in the original custody proceedings as well as subsequent actions, it will be necessary to address in order those portions of the judgment.

## I. LACK OF JURISDICTION–CUSTODY PETITION

■ The trial court first concluded that the Juvenile Court never acquired jurisdiction because of the insufficiency of the custody petition of April 10, 1981, and because the court did not comply with other statutory procedures to make the child a ward of the court and place him in the custody of the DFS. In fact, all the questions of jurisdictional implications relating to events prior to the filing of the termination petition in question were raised by the court's own motion. Though not raised by a party, subject matter jurisdiction may be examined on the mere motion of the court. *Gorman v. State Highway Commission,* 552 S.W.2d 335, 336 (Mo.App. 1977). A court has a duty to *sua sponte* inquire into and determine whether it has jurisdiction. *Hart v. Board of Adjustment of Marshall,* 616 S.W.2d 111, 113 (Mo.App. 1981).

Specifically, the court found that the face of the original custody petition did not comply with the requirements of § 211.091 or of Rule 114.01. Section 211.091 provides:

1. The petition shall be entitled "In the interest of ......., a child under seventeen years of age".

2. The petition shall set forth plainly:

(1) The facts which bring the child within the jurisdiction of the court;

(2) The full name, birth date, and residence of the child;

(3) The names and residence of his parents, if living;

(4) The name and residence of his legal guardian if there be one, of the person having custody of the child or of the nearest known relative if no parent or guardian can be found; and

(5) Any other pertinent data or information.

The Court stated that the petition failed to state the age and sex of the child in the caption, the residence of the child and his parents, and the name and address of any person or agency having custody of the juvenile. As a result, it was the Juvenile Court's opinion that the petition was insufficient to vest the court with jurisdiction.

■ This court does not agree with this assessment. It is readily apparent that the age and sex of the child can be determined from the face of the petition. The petition states the child's date of birth to be January 14, 1981, indicating that he was then three months old. The petition also uses the pronoun "he" in reference to the child and designates the child by his name D——— D———, which by universal understanding connotes that the child is of the male gender. *In re S——— M——— W———,* 485 S.W.2d 158, 161 (Mo.App.1972). The comments to Rule 114.01.a indicate that the requirement that the age and sex of the child must appear in the caption is a minor modification introduced in the interest of clarity. It is ruled herein that the absence of same does not amount to a fatal defect.

■ As to the child's residence, the petition plainly stated that D.L.D. had had no permanent residence since birth. In fact, the parents' failure to provide a permanent residence for the child was a major reason for filing the custody petition in the first place. Section 211.031 provides that the "juvenile court shall have exclusive original jurisdiction in proceedings ... [i]nvolving any child who may be a resident of *or found within the county*" (emphasis added). The record is clear that D.L.D. was physically present in Cole County when the custody petition was filed.

■ As to the mother, an examination of Exhibit No. 1 (apparently attached to the petition), which was a narrative prepared by the mother's caseworker, reveals that in the month prior to filing of the custody petition, the mother reported at least two addresses at which she was staying. She also called the case worker from the Governor Hotel and Rodeway Inn and asked for approval to take the baby to the Rodeway Inn. On April 10, 1981, the case worker called the mother at Veit's Village only to discover that she had checked out. It is obvious that the mother had no residence which could be listed on the petition.

■ The evidence shows that the father lived with his parents in Cole County on April 10, 1984. The child's paternal grandmother initially requested that the juvenile officer pick up the child at their house. Though the petition does not give the father's residence, it does state his name. This court agrees with the appellants that because so much time had been spent by the persons involved with the child and with the parents prior to April 10, 1981, it would be reasonable to assume that the officials knew who had custody of the child, where the child was, and that the father lived with his parents and so informed the court.

These deficiencies cited by the trial judge could have been avoided. However, they are minor in nature and do not go to the substantive issue of whether jurisdiction attached. Section 211.131.3 RSMo provides: "The jurisdiction of the court attaches from the time the child was taken into custody." The juvenile court's order, dated April 10, 1981, stated that the child came within the purview of § 211.031, which grants exclusive jurisdiction to the juvenile court. The order further placed the child in the custody of the DFS. At this point, jurisdiction attached. There is nothing in § 211.131.3 or in the statutory scheme of the juvenile code that suggests that filing of a technically imperfect custody petition operates to negate the jurisdiction of the court in the custody proceedings.

■ This court also finds that the petition satisfied the requirements of § 211.-091.2(1) and Rule 114.01.b(3). The rule, which amplifies the statute, provides that the petition "shall set forth plainly and concisely, with reasonable particularity ... the facts which bring the juvenile within the jurisdiction of the juvenile court, including the date, place and manner of the acts alleged and the law or standard of conduct, if any, allegedly violated by the acts."

Summarized, the petition alleged that D.L.D. had no permanent residence since his birth. It gave the dates when the child was hospitalized and indicated the doctor's belief that the mother would not follow through on medical care. The petition stated that the mother and father fought constantly with each other and neglected and abused the child. The child changed hands frequently, with the result that he was constantly exposed to bad weather and became sick. Apparently, attached to the petition was a memorandum prepared by the DFS caseworker setting forth an extensive history of DFS's involvement with the mother and father.

The petition here is much more detailed than the petition in In the *Interest of C.J. A.A.*, 674 S.W.2d 266 (Mo.App.1984), which alleged that the child was " 'without proper care, custody and support, in that his father had failed to provide a physically safe and emotionally sound environment for the child.' " *Id.* at 267. The juvenile court's reliance on *C.J.A.A.* for its conclusion that

the petition did not set forth plainly the facts which brought the child within the jurisdiction of the court is misplaced. As a matter of law, the petition is sufficient to bring the child within the purview of § 211.031.

■ The basic purpose of a petition filed in Juvenile Court is to state facts which bring the child within the jurisdiction of that court. *Richardson v. State,* 555 S.W.2d 83, 86 (Mo.App.1977). The petition emphasized that the child was neglected and in need of care and medical treatment, both of which the parents were not providing. Thus it stated facts sufficient to vest the juvenile court with jurisdiction to act. *See In the Matter of Trapp,* 593 S.W.2d 193, 199 (Mo. banc 1980).

## II. LACK OF JURISDICTION—

## SUMMONS AND CUSTODY HEARING

The appellants next complain of the finding that the court was without jurisdiction to make the child a ward of the court and place him in the custody of the DFS because neither was a summons served on either parent nor was an evidentiary hearing held on the original custody petition. The applicable statutes are §§ 211.101, 211.111, and 211.171. The corresponding Rules are 115.01, 115.03, 119.01, and 119.-02.

Section 211.101 provides that unless the parties appear voluntarily after a petition has been filed, "the juvenile court shall issue a summons ... requiring the person who has custody of the child to appear personally ... at the time and place stated." Moreover, "[i]f the person so summoned is other than a parent or guardian of the child, then the parent or guardian ... shall also be notified of the pendency of the case and of the time and place appointed." Section 211.111 provides the method by which the summons is served and § 211.171 sets out the procedure for the hearing.

The appellants argue these statutory provisions are merely procedural technicalities and are inapplicable to the sections of the juvenile code dealing with the termination of parental rights (§§ 211.442 to 211.492). This court agrees that the statutes dealing with termination of parental rights are a code within themselves. *See R.L.L. v. Strait,* 633 S.W.2d 409, 411 n. 3 (Mo.App. 1982). However, § 211.447.2(2)(i)b, one of the sections under which the juvenile officer seeks to terminate the rights of the parents, contemplates two separate proceedings. First, there is a neglect proceeding pursuant to §§ 211.031—211.431. Second, there is a parental termination proceeding pursuant to §§ 211.442–211.492. *C.L.P. v. Pate,* 673 S.W.2d 18, 20 (Mo. banc 1984); *R.L.L. v. Strait, supra,* at 411 n. 3.

■ The purpose for each of these proceedings is different. The neglected child provisions contemplate only a temporary shift in custody and leave the parental rights intact, while the termination provisions contemplate a complete and permanent rupture of the family relationship. *C.L.P. v. Pate, supra,* at 20. In the custody proceeding, the statutes clearly and unequivocally mandate that the court issue a summons to the parents and conduct an evidentiary hearing on the petition.

This court can find no reported cases in which the lack of notice or a hearing on a neglect petition was the issue in a custody case. However, other cases emphasize the import of notice and a hearing in juvenile custody cases. *In re C__ R__ N__,* 501 S.W.2d 545 (Mo.App.1973), was a habeas corpus proceeding in which the juvenile asserted that he was unlawfully and illegally confined in the State Training School for Boys. The court committed the juvenile without notice to him, his parents, or his attorney and without any hearing before any judge or other juvenile officer. *Id.* at 546. The Court of Appeals held that § 211.211, RSMo 1969 was mandatory and that "before committment a juvenile must have an opportunity to have and be represented by counsel at a hearing, and a failure to afford this protection not only violated the statute but offended the basic constitutional rights of due process and fair treatment." *Id.* at 547.

In another delinquency case, the Missouri Supreme Court stated that § 211.101, RSMo 1969, "makes it mandatory that the parent or guardian be notified.... [A]bsent such notice or voluntary appearance of the parent or guardian, the court is without jurisdiction to proceed with a hearing at which one of the issues to be determined is whether, as in this case, the child has violated a state law." *In re W.W.M.,* 479 S.W.2d 446, 448 (Mo. banc 1972).

Likewise, a transfer of custody case under a divorce decree prompted the Court of Appeals to reiterate the paramount importance of notice and a hearing. "[T]he proceedings for a change of custody order are not and never should be cursory or perfunctory, and courts should not only zealously protect the interests of the child, but also afford the parents an opportunity to be heard and accord them due process." *Flickinger v. Flickinger,* 494 S.W.2d 388, 391 (Mo.App.1973). By analogy, the statutory requirements affording notice and a hearing to the parents are not minimized by the fact that the custody transfer was in the context of a neglect proceeding rather than a divorce or delinquency proceeding. In enacting §§ 211.101, 211.111, and 211.-171, the legislature recognized the fundamental and abiding truth that reasonable notice to and an opportunity to be heard by those whose rights are affected by a summary proceeding are a veritable cornerstone in our judicial system. *State v. Pogue,* 282 S.W.2d 582, 585 (Mo.App.1955).

■ The record is clear that the court did not issue a summons to the parents as required by §§ 211.101 and 211.111. It does indicate that the paternal grandparents received a copy of the petition and order, which they showed to the father, who in turn apparently showed these same "papers" to the mother. Nevertheless, receipt of these documents by the parents does not constitute service of a summons. Moreover, a hearing was never scheduled even though the father filed a motion for return of custody of the child on April 20, 1981.

■ Failure to comply with the notice and hearing statutes was not a mere procedural technicality which should be overlooked as the juvenile officer and guardian ad litem contend. Furthermore, the supposed emergency nature of the petition and custody order is no excuse for dispensing with a summons and a hearing on the petition. *Ex parte J.A.P.,* 546 S.W.2d 806, 808 (Mo.App.1977). Section 211.131 provides that the parent *shall* be notified as soon as possible when a child is taken into custody.

The words of the court in *In re M___,* 446 S.W.2d 508 (Mo.App.1969), still hold true:

> Even without the requirement of the Juvenile Act for a hearing, the administration of justice, particularly where the interests of minor children are involved, would still require that so far as reasonably may be done in accordance with orderly procedure, cases should be decided on their merits after a full hearing. *Id.* at 514.

■ Thus, even though the court had jurisdiction over the child to act and order the juvenile officer to take the child into custody at once, the ex parte order did not alleviate the court's further duty to issue a summons and conduct a hearing on the parent's custody rights under the statutes and according to notions of due process and fair play. Jurisdiction to adjudicate encompasses not only jurisdiction of the subject matter and of the parties, but also jurisdiction to render a particular judgment in a particular case. *In re M___, supra,* at 513. In the instant case, the juvenile court had jurisdiction of the subject matter, but until there had been a summons and hearing on the original petition, it did not have jurisdiction to later enter a judgment terminating parental rights.

## III. TERMINATION

The failure of the juvenile court to conduct a hearing on custody of the parents adversely affected the proceeding to terminate their rights. The infirmities in the custody stage of this action have precluded

a review on the merits of the appeal arising out of the termination. This court thus makes no determination on the evidence presented in the termination trial. It will therefore only be necessary to make some comment on the two grounds alleged for termination.

## A. FAILURE TO RECTIFY CONDITIONS

Section 211.447.2(2)(i)b is a ground for termination under the following conditions: 1) the child has come under the jurisdiction of the court pursuant to § 211.031; 2) an order of custody was entered under § 211.-181; and 3) for a period of at least a year before the termination petition "the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under section 211.031, and the order entered under section 211.181."

On April 10, 1981, the juvenile officer filed a petition alleging neglect of the child. This was done on the recommendation of DFS, which had had extensive dealings with the mother and father. On the basis of that petition and under the purview of § 211.031.1(1)(a), the juvenile court entered an order finding the child neglected and authorizing DFS to take the child into custody. At that time the jurisdiction of the court attached. *See In the Matter of C.G.,* 539 S.W.2d 705, 706 (Mo.App.1976).

Although the court neither issued a summons to the parents, who consequently did not file an answer, nor held a custody hearing, the parents have never disputed the basic facts which brought the *child* within the jurisdiction of the juvenile court. In the *Interest of D.R.W.,* 663 S.W.2d 426, 427 (Mo.App.1983). Nevertheless, the basic problem concerns how the court proceeded after entering its custody order. The custody order attempted to vest *legal* custody in DFS without a hearing afforded to the parents to divest them of their legal rights. Even if there were sufficient facts to justify a pickup of the neglected child, as in *R.L.L. v. Strait, supra,* and even if an emergency situation existed, the order of transfer legally established nothing without a hearing.

The end result here is there has been no valid judicial determination of the conditions which formed the basis of the petition. The court acquired jurisdiction to make the child a ward of the court by virtue of the petition and order. However, the *conditions* of neglect and the purported transfer of legal custody were never established by anything independent of the petition. Consequently, those "conditions" could not be later used as a basis for termination. Therefore, because of the lack of a hearing in the custody stage, this pleaded ground for termination was not capable of being tried on the merits.

By the same token, these procedural infirmities do not vitiate the original and continued jurisdiction of the court over the neglected ward to this date. In other words, the court's original assumption of jurisdiction over the neglected child under § 211.031 may not be set aside. *See In the Interest of R.S.P.,* 619 S.W.2d 863, 865 (Mo.App.1981). Moreover, the court's jurisdiction has continued under § 211.041 despite the ill-fated attempts to transfer legal custody from the parents to DFS. The failure to *properly* adjudicate legal custody under § 211.181 does not here divest the court of its jurisdiction over this little boy.

## B. NEGLECT–FAILURE TO FOLLOW PLAN

Several "Service Agreements" entered into between the father and DFS and the mother and DFS were offered into evidence. Generally, these agreements called for the mother to get a permanent place to live, to visit the child, and to receive a psychiatric examination. The father was to visit the child and pay support. The trial judge found none of these agreements were ever "approved of record by the court." The court concluded the ground for termination of failure to comply with a plan under § 211.447.2(2)(b) could not be utilized since there had been no court approval of any of the plans. The applicable

portion of § 211.447.2(2)(b) reads as follows:

> In those circumstances where the child is not in the legal or actual custody of the parent, the person or agency having legal or actual custody of the child *must* show that an appropriate plan approved by the court has not been reasonably complied with by the parent or has been unsuccessful, and that the parents were notified of the court approved plan and had at least ten days in which to request a hearing on such plan. (Emphasis added).

 There is nothing in the record that shows the juvenile court approved any of the plans the juvenile officer seeks to use as the basis for termination. Simply having the parents sign these agreements with a DFS representative and then filing this paper in the circuit clerk's office does not meet the clear directive of the statute. The appellants admit the plans were not "officially approved by the court." However, they argue that the court must have known about them since it approved the "Foster Care Review Findings," which mention the service agreements. This contention was directly denied in In the Interest of D.L.H., 660 S.W.2d 471, 473–74 (Mo. App.1983).

 The statute mandates that the court approve the plan the parents and agency have agreed upon. Nothing less than the court approval of the terms of such a plan will allow parental termination for failure to live up to the plan. It is not enough for the DFS to get the parent's assent to provisions in a plan. There is "an affirmative duty to submit a plan for court approval and to provide notice to the parents and an opportunity for a hearing." In *Interest of W.F.J.*, 648 S.W.2d 210, 215 (Mo.App.1983). When that requirement has not been met, parents who have not had custody of their child may not have their rights terminated for neglect. *Id.*

Mention is now made of the "Foster Care Review Findings" first noted in this opinion under the table of events on June 30, 1983. The legal file shows who was present and the particular actions to be pursued. These forms are signed by the juvenile officer as "Hearing Officer" and were some days later "so ordered" by the judge. They state notice of the findings have been sent to the parties under § 211.027 and Rule 127.04 (which relate to actions by a juvenile commissioner). The law on children in foster care is found in §§ 210.700 through 210.760, which generally require dispositional hearings on the status of the child to determine whether the child should be continued in foster care or returned to his parents or whether a petition should be filed to terminate parental rights. Section 210.720 requires a dispositional hearing eighteen months after placement. These particular proceedings denominated "Foster Care Review Findings" appear to be a hybrid of several activities. There is no statutory authorization for a juvenile commissioner in Cole County. It is a puzzlement as to why the juvenile officer who filed the petitions for custody and termination would be conducting a hearing and presenting findings as a "hearing officer."

## IV. GUARDIAN AD LITEM FEES

Remaining is the motion of the guardian ad litem for his fees in the termination proceedings. His motion shows he spent considerable time on the case since his appointment in June, 1983. The trial court denied his request for payment of $4,200 for his time through trial because more than thirty days had passed from the date of judgment and the matter was then before this court. The trial on termination took place on June 21, 1984. On October 14, 1984, the court signed the judgment in Columbia, but according to the guardian ad litem and the juvenile officer, they received no notice of the judgment and found out about the court's action by accident on November 20, 1984. On their application a special order allowed the guardian ad litem and juvenile officer to file this appeal out of time. The itemized application shows an additional amount claimed of $2,115 since trial and approximately another $900 on appeal. This court determines the total

reasonable value of the guardian ad litem's services to be $5,000.

 Section 211.462.1 requires the court to appoint counsel for the child in termination proceedings. *See L.L.R. v. Christian Family Services, Inc.,* 620 S.W.2d 14, 16 (Mo.App.1981). Section 211.-462.4 provides court costs are to be paid by the county, except the court may require the agency having legal or actual custody to pay the costs. Compensation to an attorney who is required to represent the child is a predictable "cost" under the statute. *A.M.G. v. Missouri Division of Family Services,* 660 S.W.2d 370, 371 (Mo.App. 1983); *see also L.R.R. v. Christian Family Services, supra,* at 15. *A.M.G., supra,* at 372 held that the Division of Family Services was an "agency" under the statute susceptible to those costs. Since this court holds the Division of Family Services has had actual custody, the trial court on remand is ordered to enter judgment in favor of the guardian ad litem for $5,000 to be assessed as costs against the Division of Family Services. The court notes the conscientious effort put forth on this case by the guardian ad litem, Mr. Reine.

\* \* \* \* \* \*

This case has consumed an inordinate amount of time, and this court is indeed sorry the litigation cannot be now ended. *In re M——, supra,* at 514. All who are involved in this case are urged to bring this case concerning a child to a prompt, just, and legal conclusion. *Id.* The disposition of this present appeal is in no way to be construed as invalidating, altering or modifying the juvenile court's jurisdiction and authority over this child pursuant to the prior proceedings under §§ 211.031 and 211.181. Nor should the natural parents assume that this opinion authorizes or even supports a return of custody of this child to the parties. That issue awaits determination in the future. *In the Interest of R.S.P., supra,* at 865.

It is held the child became a ward of the court on April 10, 1981, and has remained under the continuing jurisdiction of the court since that time. The *actual* custody of the child has been and is now with DFS. The infirmities in the custody portion of this action preclude a review on the merits of the appeal arising out of the termination. To attempt to finalize the case on the merits would be to overlook the blatant disregard for the statutes requiring hearings in these matters.

The cause is remanded for a proper adjudication of whether legal custody should be transferred from both the mother and father, and then, if so determined, whether a petition should be filed for termination of their parental rights. The $5,000.00 cost for the guardian ad litem is assessed against DFS, while the remaining cost of the appeal is assessed against Cole County.

All concur.