IN the INTEREST OF D.J.B.

STATE of Missouri,
Petitioner-Respondent,

v.

M.B., Respondent-Appellant.

No. 13739.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 10, 1986.

uling of substances when the federal statutory scheme changes.

John A. Clark, Poplar Bluff, for petitioner-respondent.

William B. Gresham, III, Poplar Bluff, for respondent-appellant.

1. Parental rights of D.J.B.'s father have been previously terminated by judgment entered April 18, 1983, because he had abandoned his

PER CURIAM.

The parental rights of M.B., mother of D.J.B., were terminated by judgment entered in the trial court on March 10, 1984.[1] M.B. filed an appeal, which was dismissed by this court for lack of jurisdiction, based on our belief that her notice of appeal was not timely filed. On transfer, the Supreme Court disagreed, holding that her notice was timely filed, and remanded the case to us for consideration of the appeal on the merits. *In Interest of D.J.B.*, 704 S.W.2d 217 (Mo. banc 1986). We reverse.

D.J.B. was born February 24, 1972, and first came to the attention of the Butler County Circuit Court on July 3, 1978, when the juvenile officer of that county filed a petition alleging that D.J.B. was within the jurisdiction of the court because he was "in need of care and treatment under the supervision of this court for the following reasons: .... (c) The behavior, environment or associations of the child are injurious to his welfare or to the welfare of others ... in that heretofore to-wit, on the 2nd day of July, 1978, at and in the City of Poplar Bluff, County of Butler, and State of Missouri, said child did become neglected, to-wit: see line (c)." The petition did not state any facts to support the conclusions stated in the petition.

At the time the petition was filed, § 211.-091 and Rule 114.01(3)[2] required that a petition seeking to bring a child within the jurisdiction of the juvenile court plainly set forth the facts which would confer such jurisdiction. The latter specified "including the date, place and manner of the acts alleged and the law or standard of conduct, if any, allegedly violated by the acts...." Section 211.031 provided, as it still does in somewhat different form, the outline of areas of juvenile court jurisdiction, including where "[t]he behavior, environment or associations of the child are injurious to his

wife and child. He has not appealed, and termination of his rights is not an issue here.

2. This statutory reference is to RSMo 1969, and

welfare or to the welfare of others...." § 211.031.1(1)(c).[3]

■ The petition did not contain any allegation that M.B., or any other named person, had neglected the child, or what specific acts had been committed by M.B., or anyone else, that constituted neglect of the child by M.B., who was his custodian. Since the petition did not charge M.B. with neglect of her child, or inform her of the factual basis for any such charge, the allegations of the petition were insufficient, as a matter of law, to vest the Butler County Circuit Court with jurisdiction over the child. *In Interest of C.J.A.A.*, 674 S.W.2d 266, 268 (Mo.App.1984); *M.R.H. v. McElroth*, 622 S.W.2d 15, 17 (Mo.App.1981). It, therefore, follows that the subsequent ex parte juvenile court order entered July 5, 1978, removing D.J.B. from the custody of his mother and placing him in the custody of the Division of Family Services (D.F.S.), with authority to place the boy in a foster home, which order was entered without hearing or notice, and was based solely on the basis of the allegations of the petition filed on July 3, was void for lack of jurisdiction.

Service of a copy of the defective petition was made on the mother on July 21, 1978, together with a summons advising her that a hearing would be held on the matter at 11:00 a.m. on July 25, in the Butler County Juvenile Court in the courthouse at Poplar Bluff. The next entry on the court's docket sheet shows a guardian ad litem was appointed for D.J.B. on July 24, 1978. The record is silent as to what, if anything, transpired on July 25, which was the hearing date. The next record of any court order or proceeding is a summons issued to M.B. on March 24, 1980, directing her to appear in court on April 11, 1980, at 10:30 a.m. for a hearing on a petition in the interest of her son. We assume the petition referred to in the summons is the one filed July 3, 1978, as that is the only one shown in the record as filed up to that time.

The next chronological court record before us is a juvenile court docket entry of April 11, 1980, which reads as follows: "Juv.Off. in person—Juvenile by g.a.l. Jim Markel—Waived formal hearing—Evid. sustains petition—Found neglected—Child made a ward of the court—continue custody w/D.F.S. in foster care." This was followed on July 2, 1982, with a filing by the juvenile officer of a petition for termination of parental rights, which, as amended November 24, 1982, reads as follows:

Comes now William G. Hentz, duly appointed juvenile officer of the Circuit Court of Butler County, State of Missouri and after making preliminary inquiry as provided by law, states:

1. [D.J.B.], a male child born February 24, 1972, a resident of Butler County, Missouri.

2. The biological mother of the child is [M.B.] whose address is 208 North Riverview, Poplar Bluff, Missouri.

3. The biological father of the child is [J.H.B., Jr.], whose address is unknown.

4. This Court did on the 5th day of July, 1978 find that said child came within the jurisdiction of this Court and committed said child to the custody of the Division of Family Services and that thereafter, up to and including the date of the filing of this Petition said agency has provided for the care of said minor child.

5. That termination of all the parental rights of [M.B.] and [J.H.B., Jr.] in, to and over [D.J.B.] is being sought by the filing of this Petition and the institution of this proceeding by petitioner in acord [sic] with Section 211.447.2.

6. That the custody of the child has not been with his parents for six months or longer, the child has been under the jurisdiction of this Court for one year or longer immediately prior to the filing of the Petition to Terminate, the parents have failed, on a continuing basis, to rectify the conditions which form the basis of the petition filed under Section

---

the rule reference is to Missouri Rules of Court (9th ed. 1978).

**3.** This statutory reference is to RSMo 1969, as amended by S.B. 511, 1976 Mo.Laws 865.

211.031, and the Order entered Section 211.181, and there is reasonable cause to believe that the parents will not, even if given more time, rectify those conditions on a continuing basis, that the Juvenile Office, Division of Family Services and further agency have used reasonable, diligent and continuing efforts to aid the parents to rectify the conditions and provide on a continuing basis a proper home for the child.

7. The mother, [M.B.] is so mentally deficient she is unable to form an interest or act knowingly, and has substantially and continuously neglected the child and failed to give the child necessary care and protection. The mother, [M.B.], is unfit by reason of habitual use of intoxicating drugs which has also affected her health.

8. That for the foregoing reasons set forth in the paragraph immediately above termination of all parental rights of said parents in, to and over said minor child would be in the best interest of said child.

WHEREFORE, petitioner prays the Court to order, adjudge and decree all of the parental rights of [J.H.B., Jr.] and [M.B.] in, to and over said [D.J.B.] be terminated and said custody be transferred to the Division of Family Services and for such other and further relief as the Court shall deem meet and proper.

M.B., by answer filed by her attorney, admitted the allegations of paragraphs 1, 2, and 3 of the petition, and denied those of the remaining paragraphs.

The juvenile judge was disqualified on the basis of a motion filed by M.B., and a successor judge was designated. On April 12, 1983, a hearing on the termination petition was held. D.J.B., accompanied by his guardian ad litem, was present as were M.B. and her attorney. Evidence was introduced.

The bulk of the evidence related to M.B.'s problems with alcohol, which, in the opinion of a psychologist, caused her to lack the necessary stability to properly raise D.J.B. The psychologist also opined that the child would be better off in another environment. A social worker outlined a series of incidents connected with M.B.'s abuse of alcohol, and the fact that she was either unable, or unwilling, to keep agreements made with D.F.S. to stop drinking.

Following the hearing of evidence, docket entry of April 12, 1983, was made which, in part, states: "Testimony is adduced and Petitioner's Exhibits # 1–# 3 and Respondent's Exhibit # 1 are introduced into evidence." The court took the matter under advisement. On April 18, 1983, in a docket entry, the trial court, after a recital that it had heard and weighed the evidence, terminated the parental rights of the father for the reasons that he had abandoned the child "for a period well in excess of 6 months and has, without good cause, left the child without any provision for support ...." With respect to M.B., the court took the matter under advisement for six months from date of the docket entry, at which time a supplemental hearing was to be held prior to a final determination on the merits as to the termination of her parental rights. Custody of D.J.B. was ordered to remain in D.F.S., which was ordered to enter into a court approved supervised plan or agreement. The plan was to include increased maternal visitation and treatment and counseling of M.B. for alcohol abuse, "for the purpose of rectifying the conditions which formed the basis of the petition filed under Section 211.031," which, we assume, was the petition filed on July 3, 1978, and which we have branded as legally insufficient. From the record, one is left to speculate what those conditions were.

There is nothing in the record to indicate whether any supervised plan or agreement between M.B. and D.F.S. was ever approved by the court. On November 4, 1983, the juvenile officer recommended to the court that physical custody of D.J.B. be transferred back to M.B., with "legal custody" remaining in D.F.S., and that M.B. enter into a "new" service agreement with D.F.S. The agreement was to specifically require attendance of M.B. at Alcoholics Anonymous meetings, and "any other re-

quirements deemed necessary for mother's rehabilitation." We are left to ponder who would determine what requirements were necessary, and what those requirements were.

M.B. made no objection to the juvenile officer's request, and it was granted with the proviso that "D.F.S. to furnish monthly reports on status," and the matter was again taken under advisement for an additional six month period.

On February 29, 1984, with M.B. and her counsel present, further evidence was presented. This evidence, given by psychologists, police officers, and social service workers, was similar to that given at the earlier hearing and, in addition, established events connected with drinking episodes of M.B. at a later point in time than those related at the earlier termination hearing.

After hearing the testimony above, the court took the matter under advisement. Upon request of M.B., the trial court made written findings of fact and conclusions of law and, on March 10, 1984, entered judgment terminating M.B.'s parental rights. In its judgment, the trial court stated the child had come within the jurisdiction of the court on July 5, 1978, "pursuant to the provisions of Section 211.031.1(c), RSMo and pursuant to a subsequent order of this Court under Section 211.181, RSMo." It found that D.J.B. had been in the custody of D.F.S. for at least one year prior to the filing of the termination proceeding, and had not been in M.B.'s custody for six months or longer. The trial court found that M.B. had not rectified the conditions that formed the basis for the initial referral of the matter to the juvenile court, which conditions are not stated in the record, and that there were reasonable grounds to believe that she would not, even if given more time, rectify those conditions in the future.

The trial court specifically found that M.B. suffers from chronic alcoholism, and that her prognosis of recovery is poor. It further found that she has unsatisfactory judgmental insight, and is unable to provide a stable home environment and unable to assume the responsibilities of a parent. The trial court concluded that the evidence before it affirmatively showed D.J.B. was neglected, due to lack of parental care, precipitated by M.B.'s consumption of alcohol and/or her inability to provide a suitable home environment, and that she was unable, or unwilling, to stop drinking, and to take proper care of D.J.B. The court found that D.J.B. was in need of, and entitled to, a stable home environment, and that it was in the best interest of the child, and that the court, having no other viable option, was terminating the parental rights of M.B., and transferring custody of D.J.B. to D.F.S. for continued placement.

In her appeal, M.B. contends in her first point relied on, with ten sub points, that the trial court erred when it entered its order of July 5, 1978, removing custody of D.J.B. from her and placing it with D.F.S., and when it entered its order of April 11, 1980, finding D.J.B. to be neglected, and making him a ward of the court, because the petition on which those orders were based was insufficient to put her on notice as to the charges of neglect brought against her, lack of notice as to the July 5, 1978 proceeding, lack of record pertaining to the July 5, 1978 order, and other claimed procedural and evidentiary deficiencies relative to this case that occurred before the termination petition was filed. Her point is well taken. As we have noted, the court did not acquire jurisdiction by the petition filed July 3, 1978. The mother was denied due process by the ex parte order of the court of July 5, 1978, and subsequent orders and judgments based on that faulty premise of jurisdiction. *In Interest of D.L.D.*, 701 S.W.2d 152, 158–159 (Mo.App. 1985).

■ This being true, the first question to be decided is whether the procedural deficiencies, inherent to the neglect proceedings that fatally flawed any court orders or judgments concerning the initial finding that D.J.B. was neglected and removing him from the custody of M.B., so contaminate the trial court's order and judgment

in the termination case so as to render it void, which would mandate a reversal.

The power of Missouri courts to sever all legal rights, privileges, duties, and obligations of a parent of a child derives solely from statutory enactments on that subject entitled, "Termination of Parental Rights." The statutes concerning termination that were applicable at the time the amended termination petition was filed were §§ 211.-442 through 211.492, RSMo 1978, as amended 1982,[4] which body of laws is a complete code within itself. *R.L.L. v. Strait*, 633 S.W.2d 409, 411–412 n. 3 (Mo. App.1982); *In re S___ M___ W___*, 485 S.W.2d 158, 164 (Mo.App.1972). Section 211.447.2(2) provides that a juvenile court may terminate the rights of a parent to a child if the court finds that such termination is in the best interest of the child and one or more of the following conditions exist:

(2) When it appears by clear, cogent and convincing evidence that one or more of the following conditions exist:

(a) The parent has abandoned the child. The court may find that the parent has abandoned the child if, for a period of six months or longer for a child over one year old or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition, either of the following has occurred:

a. The parent has left the child under such circumstances that the identity of the parent of the child was unknown and could not be ascertained, despite diligent searching, and the parent has not come forward to claim the child;

b. The parent has, without good cause, left the child without any provision for support and without any communication or visitation from the parent. Evidence that the parent has acted to support, to communicate with or to visit the child during the period may be disregarded if such acts of the parent appear to have been merely a token effort;

(b) The parent has neglected, without good cause, the child for a period of six months prior to the filing of the petition. The term **"neglected"** as used here is the failure of a parent to provide, on a continuing basis, the care, guidance and control necessary for the physical, mental, and educational well-being of a child; or the failure to provide a child who is in the legal or actual custody of others with a continuing relationship, such as, but not limited to, communication or visitation, and, to the extent the parent is financially able, the failure to provide for the child's care. In those circumstances where the child is not in the legal or actual custody of the parent, the person or agency having legal or actual custody of the child must show that an appropriate plan approved by the court has not been reasonably complied with by the parent or has been unsuccessful, and that the parents were notified of the court approved plan and had at least ten days in which to request a hearing on such plan. Token efforts by the parent shall not be sufficient to defeat a finding of neglect;

(c) The parent has committed, or knowingly permitted, an act of incest with the child, or other sexual molestation of the child;

(d) The parent has repeatedly or continuously abused the child by causing physical injury or mental injury to the child, or knowingly permitted such abuse by another;

(e) The parent has knowingly committed or knowingly permitted a single incident of life threatening or gravely disabling injury or disfigurement of the child or serious injury or death of a sibling due to parental abuse or willful and wanton neglect;

(f) The parent, who is both legally required and financially able, has failed to support the child for a period of six months;

---

**4.** The termination code was amended by S.C.S. H.C.S.H.B. 1171, 1173, 1306 and 1643, 1982 Mo.

Laws 419. The amendments became effective August 13, 1982.

(g) The parent has a mental condition which:

a. Renders him unable to form an intent or act knowingly; and

b. Is shown by competent evidence to be permanent or that there is no reasonable likelihood that the condition is reversible, and such parent has substantially and repeatedly neglected the child or failed to give the child necessary care and protection;

(h) The parent who by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior has subjected the child to a substantial risk of serious physical, mental or emotional harm;

(i) The child has come under the jurisdiction of the juvenile court pursuant to the provisions of subdivision (1), paragraph (a), (b) or (c) of section 211.031, and pursuant to an order of the court under section 211.181, and thereafter:

a. The parent in custody of the child has willfully and intentionally inflicted or attempted to inflict further injury or cruel punishment upon the child, or has continued, without good cause, to refuse or neglect to provide the child with necessary food, clothing, shelter, medicare care or education; or

b. The custody of the child has not been with his parents for six months or longer, or the child has been under the jurisdiction of the court for one year or longer, immediately prior to the filing of the petition to terminate, and the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under section 211.031, and the order entered under section 211.181, and there is reasonable cause to believe that the parent will not, even if given more time, rectify those conditions on a continuing basis, and that the juvenile officer, division of family services or other agency has used reasonable, diligent and continuing efforts to aid the parent to rectify the conditions and provide on a continuing basis a proper home for the child.

While one of the conditions justifying termination, (§ 211.447.2(2)(i)), would be a finding that the child had come under the jurisdiction of the juvenile court pursuant to the provisions of subdivision (1), paragraph (a), (b) or (c) of § 211.031, and pursuant to an order of the court under § 211.181, and, that thereafter, the parent has failed to rectify, on a continuing basis, the conditions which formed the basis for the filing of the § 211.031 petition and subsequent § 211.181 order, such condition is not an exclusive prerequisite for the termination of parental rights. If the amended petition contained any alleged alternate statutory ground, then the court could hear and consider evidence on both theories alleged, and, if supported by clear, cogent, and convincing evidence, enter judgment terminating parental rights if the existence of either of the conditions forming the basis of the petition is demonstrated. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985).

We examine the amended petition and judgment in that light, keeping in mind that the terms of the applicable statutes must be strictly applied. *In Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App.1983); *In Interest of R.L.H.*, 639 S.W.2d 241, 241–242 (Mo.App.1982).

The language of paragraph six of the amended termination petition alleges that the condition which is described in § 211.447.2(2)(i)b. existed, which was that the child was under juvenile court jurisdiction because of the order transferring custody entered in the neglect proceeding, that the custody of the child had not been with the parents for six months or longer, but had been under juvenile court jurisdiction for more than one year prior to the filing of the termination petition, and that the parents had failed to rectify the conditions which were the basis for the neglect petition and change of custody order in that proceeding, and that there was reasonable cause to believe that, even if given more time, the parents would not rectify those conditions.

We have already observed that the change of custody order was void because the petition, on which it was based, was legally deficient and violative of due process. It, therefore, follows that if the judgment in the termination proceeding is solely based on the pleading and proof on the allegations of paragraph six, the judgment must, necessarily, fail due to the lack of proof of any valid court order entered under the claimed authority of § 211.181. *In Interest of D.L.D., supra,* 701 S.W.2d at 159–160.

Therefore, in order for the termination judgment to stand, it must be shown that some other allegation of the petition constitutes a separate and distinct statutory condition, that sufficient proof was adduced on that issue, and that, at least a part of the judgment would, if considered standing alone, justify termination of the parental rights of the mother on that basis, since an independent ground properly pleaded and proved would support termination. *In Interest of J.I.W.,* 695 S.W.2d 513, 514 (Mo. App.1985); *In Interest of Kevin,* 685 S.W.2d 938, 941 (Mo.App.1985).

Section 211.447.2(2)(g) provides that parental rights may be terminated if there is clear, cogent and convincing evidence that a parent has a mental condition which a) renders him unable to form an intent or act knowingly, and b) is shown by competent evidence to be permanent or that there is no reasonable likelihood that the condition is reversible, and such parent has substantially and repeatedly neglected the child, or failed to give the child necessary care and protection.

In paragraph seven of the amended petition, the allegations concerning mental condition are that M.B. "is so mentally deficient she is unable to form an interest or act knowingly, and has substantially and continuously neglected the child and failed to give the child necessary care and protection." This language substitutes "interest" for the word "intent" that appears in the statute, and does not allege that there is no reasonable likelihood that M.D.'s mental condition is reversible, which allegation and finding thereon are necessary to justify termination on that basis.

The only other condition alleged in the amended petition, which the juvenile officer alleged would justify termination of M.D.'s parental rights, is also contained in paragraph seven, and says "the mother, [M.B.], is unfit by reason of habitual use of intoxicating drugs which has also affected her health." The applicable statute setting forth the elements of the condition apparently referred to by such language is § 211.447.2(2)(h) which says "[t]he parent who by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior has subjected the child to a substantial risk of serious physical, mental or emotional harm." Here again, the language in the petition is markedly different from that of the statute. There is no allegation in the amended termination petition that the mother's excessive drinking subjected the child to a substantial risk of serious physical, mental, or emotional harm.

The next question is whether such deviations, together with a repetition of such statutory deficiencies in the ensuing judgment are of such magnitude as to constitute a fatal departure from the legal requirement that strict compliance with statutory procedures in termination cases is obligatory. *In Interest of W.F.J., supra,* 648 S.W.2d at 216. We are of the opinion that they are.

The judgment entered, after the court heard evidence of the mother's drinking habits and her inability, or unwillingness, to change them, does not conclude that those conditions which the court found concerning the mother's alcohol problem subjected the child to a "substantial risk of serious physical, mental or emotional harm." In addition, there is nothing in the judgment finding that any alleged mental deficiency of the mother harmed the child. We are left to speculate and surmise whether the trial court considered the statutory factors previously enumerated which, if properly pleaded and proved (which they

were not), would have justified termination of parental rights.

The power given the juvenile court to terminate parental rights is purely statutory and without such legislation, the power would not exist. In *Interest of R.L.H., supra,* 639 S.W.2d at 241. Severance of parental rights by the courts, which forever cuts the cord between parent and child, is an exercise of awesome power, and demands strict and literal compliance with the statutory authority from which the power is derived. *D.E.J. v. G.H.B.,* 609 S.W.2d 472, 474 (Mo.App.1980). Since there was not strict and literal compliance with the applicable statutes in this case, the trial court's judgment terminating M.B.'s parental rights must be reversed.

We sincerely regret the delay in processing this sad case through the courts. The judicial proceedings began in 1978, when D.J.B. was only six years old. He was twelve when the termination judgment was entered, and is now fourteen. We decline to delegate blame for the fact that it has taken eight judicial years to reach this point, with no end in sight. There is enough blame to go around.

Nothing stated herein is meant to be a comment on whether the evidence would have supported termination, if the matter had been handled in accordance with the dictates of the applicable statutes, nor do we express any opinion on the ultimate disposition of this case. *See In Interest of W.F.J., supra,* 648 S.W.2d at 216. We recognize that the child has been de facto within the control and under the supervision of public authorities for several years by virtue of court orders we now hold were improper. We do not suggest that such arrangements have not served the best interests of the child, or that such supervision should not continue, if appropriate adjudication would indicate that the child's best interests dictate that he should not be returned to the custody of his mother.

The judgment of the trial court terminating M.B.'s parental rights to D.J.B. is reversed.