In the Interest of R.I.H. and K.D.H., Juveniles.

Doug BEEVERS, Juvenile Officer, Petitioner–Respondent,

v.

M.H., T.H. and E.B., Defendants,

M.H., Mother, Defendant–Appellant.

No. 17837.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 24, 1992.

Todd F. Thorn, West Plains, for petitioner-respondent.

John N. Wiles, West Plains, for defendant-appellant.

MAUS, Judge.

This appeal stems from the termination of the parental rights of M.H., T.H. and E.B. to two children, R.I.H. and K.D.H. M.H. is the mother of R.I.H. and K.D.H. Both children were born during her marriage to T.H. However, M.H. asserted E.B. was the putative father of K.D.H. Only M.H. appeals from the judgment of termination.

The children were taken into protective custody by the Howell County Juvenile Officer on December 6, 1989, and December 12, 1989. That custody was, pursuant to Rule 111.02 b. (3), continued by ex parte orders on December 7, 1989, and December 13, 1989. On March 23, 1990, the Juvenile Division of the Circuit Court of Howell County adjudicated the children to be abused and under the court's jurisdiction by reason of § 211.031.1(1)(a).[1] On January 16, 1991, a Petition for Termination of Parental Rights was filed. A hearing on that petition was held on August 29, 1991. A judgment terminating the parental rights of the defendants was entered on September 17, 1991.

By her first point of error, M.H. contends her parental rights were improperly termi-

nated under § 211.447.2(3) because the children had not been under the jurisdiction of the Juvenile Division for one year. To support this argument, she points out that the Petition for Termination was filed less than ten months after the Juvenile Division adjudged the children to be under its jurisdiction by reason of § 211.031.1(1)(a). She cites *In Interest of Baby Girl W.*, 728 S.W.2d 545 (Mo.App.1987), *In Interest of D.J.B.*, 718 S.W.2d 132 (Mo.App.1986) and *In Interest of D.L.D.*, 701 S.W.2d 152 (Mo. App.1985).

She relies principally upon the doctrine in *In Interest of D.J.B.*, supra. In that case, a judgment of termination was based upon § 211.447.2(2)(i) b. RSMo Supp.1982. Termination under that section (now repealed), as under present § 211.447.2(3), had to be premised upon the child having been under the jurisdiction of the juvenile division for one year. In *D.J.B.*, supra, the court found the petition upon the basis of which the juvenile court assumed jurisdiction of the child failed to state facts establishing jurisdiction and an ex parte order assuming jurisdiction was void. The court concluded that a judgment of termination based upon one year's jurisdiction was erroneous as the juvenile division did not acquire jurisdiction. In reversing the judgment of termination, the appellate court said:

"It, therefore, follows that if the judgment in the termination proceeding is solely based on the pleading and proof on the allegations of paragraph six, the judgment must, necessarily, fail due to the *lack of proof of any valid court order entered under the claimed authority of § 211.181. In Interest of D.L.D., supra*, 701 S.W.2d [152] at 159–160 [Mo.App.1985]." *In Interest of D.J.B.*, 718 S.W.2d at 139. (Emphasis added.)

Section 211.447.2(3), in relevant part, provides the Juvenile Division may terminate parental rights when "[t]he child has been under the jurisdiction of the juvenile court for a period of one year, and . . . ." Section 211.131.3 RSMo 1986 provides:

---

**1.** Unless otherwise stated, statutes cited are to RSMo Cum.Supp.1991.

"The jurisdiction of the court attaches from the time the child is taken into custody."

The findings upon which the Juvenile Division based its judgment terminating M.H.'s parental rights included the following:

"The 'period of one year' mentioned in § 211.447.2(3) means one year immediately next preceding the filing of the petition. Thus if 'jurisdiction' did not commence until the formal adjudication was made, the Court has no power to terminate parental rights under that section. However, the Court finds that its jurisdiction of the two children here attached from the time they were first taken into custody in December 1989, more than one year before the petition was filed. § 211.131.3 expressly states that 'the jurisdiction of the Court attaches *from the time the child is taken into custody.*' Although no cases have been found construing this provision, and although the term 'jurisdiction' may be used in various senses in the law of our State, nevertheless all sections of the Juvenile Code are to be read together and construed *in pari materia.* It must therefore be presumed that the term 'jurisdiction' in § 211.447.2(3) has the same meaning it bears in § 211.131.3. Accordingly, the Court may entertain the TPR petition under § 211.447.2(3)." (Emphasis in original.)

In addition to § 211.131.3 RSMo 1986, the following Rules are relevant:

"The jurisdiction of the court attaches from the time the juvenile is taken into judicial custody." Rule 111.01 c.

" '[J]udicial custody' means the taking or retention of custody of the person of a juvenile in either protective custody or detention;". Rule 110.05 a. (8).

" '[P]rotective custody' means the taking and retention of the person of a juvenile in judicial custody in connection with proceedings under section 210.125 or subdivision (1) of subsection 1 of section 211.031 RSMo;". Rule 110.05 a. (19).

Citing § 211.131.3 RSMo 1986 and Rule 111.01 c., the respondent Juvenile Officer argues that "the child has been under the jurisdiction of the juvenile court" within the meaning of § 211.447.2(3) since he took them into custody more than one year before he filed the Petition for Termination.

The term "jurisdiction" is used in various contexts and with different meanings. *In re Marriage of Neal,* 699 S.W.2d 92 (Mo. App.1985). There are three alternative events that could be held to establish when "the child has been under the jurisdiction of the juvenile court" within the meaning of § 211.447.2(3). Those three alternatives are: when the juvenile is taken into protective custody by the Juvenile Officer, Rule 111.01 c.; when the juvenile has been taken into protective custody and the juvenile division by an ex parte order "determines the conditions requiring protective custody continue to exist", Rule 111.02 b. (3); or the entry of a judgment, following an adversarial hearing, finding facts which establish "its jurisdiction over the child", § 211.181.

The cases cited by M.H. apparently construe § 211.447.2(3) to mean that a child is not under the jurisdiction of the Juvenile Division within the meaning of that subsection until there has been an adversarial hearing pursuant to § 211.181 and a judgment entered finding the child is within the jurisdiction of the Juvenile Division. However, that construction is not mandated by the express terms of § 211.447.2(3) nor by the provisions of Chapter 211. The phrase "under the jurisdiction of the juvenile court" must be judicially construed.

Chapter 211 is a Code and the statutes within that Code are to be construed together. *State v. Williams,* 473 S.W.2d 382 (Mo.1971). The canons of statutory construction are well known. A canon particularly applicable to the construction of the foregoing phrase is the following:

"All provisions of a statute must be harmonized and every word, clause, sentence, and section thereof must be given some meaning." *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246, 250 (Mo. banc 1981).

The construction given to § 211.447.2(3) by the cases cited by M.H. means that the Juvenile Division cannot terminate parental

rights under that subsection until there has been an adversarial adjudication of abuse or neglect and one year has elapsed. Section 211.447.2(2) provides the court may terminate parental rights when it finds "the child has been adjudicated to have been abused or neglected." If § 211.447.-2(3) is construed to require a judgment under § 211.181 to establish a child is under the jurisdiction of the juvenile court, § 211.447.2(2) renders § 211.447.2(3) virtually meaningless.

"It is well established, however, that the presumption is that the legislature did not intend for any part of a statute to be without meaning or effect." *Stiffelman v. Abrams*, 655 S.W.2d 522, 531 (Mo. banc 1983).

However, it is not necessary to further consider the construction of the statutory bases for termination under § 211.447.2(3). The Juvenile Division made an alternate finding upon which it based the judgment of termination.

 That finding was that the children had, in an adversarial hearing, in accordance with § 211.181 "been adjudicated to have been abused and neglected." The petition alleged that adjudication to be a basis for termination. In its opinion, the Juvenile Division expressed reluctance to make this adjudication the primary basis for termination because of the limited mental capacity of the parents. Prior statutes defining the bases for termination have limited certain bases to acts a parent "knowingly committed." See § 211.447.-2(2) e., RSMo 1978 (repealed). Under such statutory provisions, the limited mental capacity of a parent was relevant if it prevented him or her from acting knowingly. The present statutes pertaining to neglect and termination do not provide for such recognition of a parent's limited mental capacity. In fact, a parent's limited mental capacity is a factor that must be considered in determining if termination is in the best interests of a child. § 211.447.2(3)(c). A neglect proceeding and a termination proceeding are not criminal prosecutions. The focus is upon the children.

"Appellant's argument that a permanent mental condition that renders a parent unable to provide a child with the necessary care, custody, and control could be construed as a mitigating factor is *totally without merit.*" *In Interest of L.G.*, 764 S.W.2d 89, 94 (Mo. banc 1989), cert. denied, 491 U.S. 909, 109 S.Ct. 3196, 105 L.Ed.2d 704 (1989). (Emphasis added.)

The adjudication of abuse and neglect was a basis for termination. § 211.447.2(2).

"If the amended petition contained any alleged alternate statutory ground, then the court could hear and consider evidence on both theories alleged, and, if supported by clear, cogent, and convincing evidence, enter judgment terminating parental rights if the existence of either of the conditions forming the basis of the petition is demonstrated. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985)." *In Interest of D.J.B.*, 718 S.W.2d at 138.

The alternate finding of the Juvenile Division is supported by the evidence and was a basis for termination. M.H.'s first point has no merit.

██ M.H.'s second point is "[t]he court erred in finding that the degree of mental retardation of the mother, M.H., would prevent her from knowingly providing the children with the necessary care, custody and control and that the evidence was not clear, convincing and cogent to support its findings." That point does not accurately reflect the finding of the court:

"5. Each parent has been shown by competent evidence to suffer a permanent mental condition, namely mental retardation, of an irreversible type, which in each instance renders the parent unable to knowingly provide the children with necessary care, custody, and control. When unsupervised, the mother neglects the children and the father abuses them; neither parent is capable of understanding that such acts and omissions constitute neglect and abuse."

A clinical psychologist who examined M.H. testified:

"My opinion is that [M.H.] is a loving parent and that I understand that she would need to visit with her children, but

it is my opinion that she doesn't have the ability to have primary care for them."

She also testified M.H.'s level of intelligence fell below 99% of the population. M.H.'s father testified:

"[M.H.] and [T.H.] were not mentally capable of keeping their house in the condition it should be. And they were constantly prodded by my wife and I and the Family Service office and various people to keep their house clean and at least in a sanitary condition. [T.H.] done the best he could, but [T.H.] was not capable of doing it. And [M.H.], whether she was capable or not, she didn't do it. She wouldn't keep it in a sanitary condition."

A social worker was asked what were M.H.'s prospects for establishing a home. She answered:

"I don't think they were very good. I could see that, you know, the progress was just a week at a time. And then we'd be two steps back and then she'd take a step forward and we'd be back to square one again, you know, and that was the pattern, it seemed to be."

There was evidence T.H. sexually abused both children in the presence of M.H. and she made no effort to stop it. This typifies the evidence that obviously supports the finding of the Juvenile Division. M.H.'s second point is denied and the judgment is affirmed.

FLANIGAN and PREWITT, JJ., concur.